**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| **DAVID L. TAFT, JR.,** | |
| Plaintiff, | **No. 11-CV-4021-DEO** |
| vs. | **ORDER ON MOTION FOR SUMMARY** |
| **DR. MICHAEL RYAN, ERVIN** | **JUDGMENT** |
| **WHITEHEAD, STEVE MCQUEEN,** | |
| Defendants. | |

_____

## I.  INTRODUCTION

Currently before the Court is Defendants' Motion for Summary Judgment.  Docket No. 25.  The Defendants argue that the Plaintiff's 42 U.S.C. Section 1983 Complaint should be dismissed.  In his Complaint, Mr. Taft, who is an involuntarily committed patient at the Civil Commitment Unit for Sex Offenders (CCUSO) in Cherokee, Iowa, argues that he should be given a hearing, pursuant to Wolff v. McDonnell, 418 U.S. 539 (1974), when disciplinary incidents negatively impact his progression through CCUSO's treatment levels.[1]  The

_____

[1]  The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses."  Iowa Department of Human Services  Offer  #401-HHS-014:  CCUSO,  1 http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited March 26, 2014.

parties appeared for hearing on February 20, 2014. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

## II.  BACKGROUND AND FACTS

The Iowa Supreme Court has set out a helpful summation of Mr. Taft's history.

> Taft was arrested in December 1987 for lascivious acts with a minor, based on allegations that he sexually molested his sister and committed other criminal sexual offenses. He was convicted and sentenced to two five-year terms and a two-year term to run concurrently. He served this sentence and was discharged on May 31, 1991.
>
> Seven days after his discharge from prison, Taft reoffended by sexually assaulting two girls who were unknown to him; one who was eight years old and the other who was ten. He was arrested and charged with second-degree sexual abuse, assault causing injury, and burglary. He was convicted and sentenced to prison. Taft was discharged from prison for these offenses on January 10, 2005.
>
> Proceedings were commenced for Taft's commitment as a sexually violent predator (SVP) pursuant to the Commitment of Sexually Violent Predators Act, Iowa Code chapter 229A on March 30, 2005... A jury found Taft suffered from a mental abnormality which made it more likely than not that he would reoffend, and he was therefore committed to the Civil Commitment

Unit for Sexual Offenders (CCUSO) under the provisions of Iowa Code Chapter 229A.

Taft v. Iowa Dist. Court ex rel. Linn Cnty., 828 N.W.2d 309, 311 (Iowa 2013).[2] Mr. Taft has been committed to CCUSO since 2005.

Mr. Taft originally filed the present Complaint in March of 2011. In June of 2011, the Complaint was consolidated with Taft et al. v. Turner et al., 05-CV-4065-DEO, a then pending class action case in which Mr. Taft was the named Plaintiff and CCUSO staff members were the named Defendants. On April 25, 2012, this Court accepted a settlement in 05-CV-4065-DEO. 05-CV-4065-DEO, Docket No. 151. However, Mr. Taft's present issue, regarding Wolff v. McDonnell, was not addressed by the settlement. Consequently, on May 22, 2012, this Court entered an Initial Review Order allowing Mr. Taft's Wolff v. McDonnell

---

[2] Additionally, there are indications Mr. Taft's sexually deviant behavior predate the 1987 case. See Docket No. 35, p. 5-6, discussing an incident where Mr. Taft locked a 6 year old girl in closet while she was a Sunday School and assaulted her; an incident sexually assaulted his younger sister; an incident where Mr. Taft sexually molested a four year old cousin; and an incident where he sexually molested an autistic child he had went to school with.

claim to proceed independent from the class action. Docket No. 13.

Turning to the present Complaint, it is clear that there are few disputed facts.[3] Mr. Taft's argument is largely legal in nature, regarding the standard articulated in <u>Wolff v. McDonnell</u>.

At the time of the hearing, Mr. Taft was in Phase 2 of treatment at CCUSO.[4] Mr. Taft argues that it is inappropriate to use behavioral reports as a factor in considering whether he should be allowed release from CCUSO. Behavioral reports are essentially 'write-ups' that CCUSO gives to patients when a patient violates a rule. The CCUSO Patient Handbook sets out the reasons for which a person can receive a behavior

---

[3] The Defendant filed a Statement of Facts with their Motion for Summary Judgment, per the local rules. The Plaintiff did not include a reply Statement of Facts in his pleading. Regardless of that omission, the Court has reviewed Mr. Taft's brief, and found no disputed facts, only legal arguments.

[4] In the Court's experience, spending the better part of a decade in Phase 2 at CCUSO is unusual. Most CCUSO patients are able to advance to the later phases of CCUSO's treatment program within a few years. See, for example, <u>Damon Willis et al v. Charles Palmer et al</u>, 12-CV-4086-DEO, which is a case where CCUSO patients in the later phases of CCUSO are challenging the constitutionality of CCUSO's process.

4

report, including but not limited: to disobeying an order, fighting or assaulting, theft, sexual behavior, boundary violations, possessing contraband, and interfering with security operations. Docket No. 26, p. 33-35. All behavior reports are investigated by a CCUSO staff person who was not involved in the incident giving rise to behavioral report. If the investigation reveals that the behavior report was founded, CCUSO sanctions the patient for their misconduct. Docket No. 26, p. 39. Patients may file grievances regarding receipt of a behavior report. Docket No. 26, p. 37-38. Patients may appeal a decision on a grievance to the superintendent or designee. Docket No. 26.

There are a couple different ways that, in theory, CCUSO patients can be released from CCUSO. First, if they complete all treatment objectives, they are allowed to leave CCUSO on 'transitional release' and, if that goes well, they may be ultimately discharged from treatment. Additionally, the Iowa State Court that originally sent the patient to CCUSO is required to conduct an annual review to determine if there is still a need to keep the patient at CCUSO. The Department of Human Services has been granted discretion to determine if

CCUSO patients are eligible for transitional release. As set

out in the Iowa Code:

> [t]he Department of Human Services is
> granted discretion to create a transitional
> release program. The legislature further
> specified criteria to be used to determine
> when a patient is eligible for transitional
> release. 1. The department of human
> services is authorized to establish a
> transitional release program and provide
> control, care, and treatment, and
> supervision of committed persons placed in
> such a program. 2. A committed person is
> suitable for placement in the transitional
> release program if the court finds that all
> of the following apply: a. The committed
> person's mental abnormality is no longer
> such that the person is a high risk to
> reoffend. b. The committed person has
> achieved and demonstrated significant
> insights into the person's sex offending
> cycle. c. The committed person has
> accepted responsibility for past behavior
> and understands the impact sexually violent
> crimes have upon a victim. d. A detailed
> relapse prevention plan has been developed
> and accepted by the treatment provider
> which is appropriate for the committed
> person's mental abnormality and sex
> offending history. e. No major discipline
> reports have been issued for the committed
> person for a period of six months. f. The
> committed person is not likely to escape or
> attempt to escape custody pursuant to
> section 229A.5B. g. The committed person
> is not likely to engage in predatory acts
> constituting sexually violent offenses
> while in the program. h. The placement is
> in the best interest of the committed
> person. i. The committed person has

demonstrated a willingness to agree to and abide by all rules of the program... [3., 4. and 5. omitted.] 6. The department of human services shall be responsible for establishing and implementing the rules and directives regarding the location of the transitional release program, staffing needs, restrictions on confinement and the movement of committed persons, and for assessing the progress of committed persons in the program. The court may also impose conditions on a committed person placed in the program.

I.C.A. § 229A.8A.

As stated above, the Iowa State Court can also release a CCUSO patient after conducting an annual review. "The annual report shall be provided to the court that committed the person under this chapter. The court shall conduct an annual review and, if warranted, set a final hearing on the status of the committed person. The annual review may be based only on written records." I.C.A. § 229A.8. The Code goes onto say that CCUSO patients shall be appointed an attorney for the annual review hearing and are allowed experts. Finally, the Code states what factors shall be considered during an annual review.

It is undisputed in the record that Mr. Taft receives numerous behavioral reports every year. For the annual period ending in 2013, Mr. Taft received five reports for various infractions, including having contraband, inciting disruptiveness, threatening another patient, and lying to staff. Docket No. 35, p. 10. It is also undisputed that these reports are evidence both in his annual review and in CCUSO's decision regarding his advancement through the phases.

It is also undisputed that Mr. Taft has had annual reviews as set out in I.C.A. § 229A.8. Mr. Taft's annual reviews for 2010 and 2011 were consolidated and proceeded through the Iowa District Court for Linn County to the Iowa Supreme Court. See Taft v. Iowa Dist. Court ex rel. Linn Cnty., 828 N.W.2d 309 (Iowa 2013). Both Courts concluded that Mr. Taft's commitment at CCUSO should continue. Mr. Taft's annual reviews for 2012 and 2013 were consolidated and were recently ruled on by Judge Ian Thornhill of the Iowa District Court for Linn County. See Docket No. 36, Att. 1. Judge Thornhill entered an exhaustive 27 page Order that examined Mr. Taft's situation and again determined that the commitment of Mr. Taft should continue. Docket No. 36, Att. 1, p. 27-28.

Other relevant background will be discussed below.

### III.  STANDARD

42 U.S.C. § 1983 provides:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . .

Summary judgment is appropriate only if the record shows
"there is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P., Rule 56(c).  A fact is *material* if it is necessary
"to establish the existence of an element essential to [a]
party's case, and on which that party will bear the burden of
proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322
(1986).  There is a *genuine issue* as to a material fact if,
based on the record before the court, a "rational trier of
fact" could find for the non-moving party.  <u>Matsushita Elec.</u>

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

## IV. ISSUE

In his brief, Mr. Taft argues "[p]risoners are entitled to due process before discipline can be imposed on them if the discipline has an impact on their release from custody. <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974)." Docket No. 33, p. 8-9. Mr. Taft argues that behavior reports are used against him, and he is entitled to a <u>Wolff</u> style hearing. He requests the Court enter an injunction ordering the Defendants to provide him such a hearing for each behavior report.

In their Motion for Summary Judgment, the Defendants make several different arguments. First, they argue that the behavior report process passes constitutional scrutiny. Next, they argue this issue has previously been resolved by the Iowa Supreme Court. Third, they argue that Mr. Taft is not eligible for any type of release, regardless of the behavior reports. Fourth, the Defendants argue that they are not personally responsible. Fifth, they are argue they are

entitled to qualified immunity.[5]  The Court will discuss these
arguments below.

## V.  ANALYSIS

### A.  Due Process

Those who are involuntarily committed retain a liberty
interest in the requirements and procedures of I.C.A. 229A.
<u>Swanson v. Civil Commitment Unit for Sex Offenders</u>, 737 N.W.2d
300, 308 (Iowa 2007).  Additionally, it is beyond dispute that
"[w]hen a state action threatens to deprive a person of a
protected liberty or property interest, a person is entitled
to procedural due process."  <u>Meyer v. Jones</u>, 696 N.W.2d 611,
614 (Iowa 2005).  As noted above, Mr. Taft argues he is
entitled to a hearing under <u>Wolff</u>, 418 U.S. at 593, when
behavioral reports are used against him, because the punitive
use of behavior reports violates his due process rights.  In
<u>Wolff</u>, the United States Supreme Court ordered that due
process required that prisoners who received discipline that

---

[5]  In their brief, the Defendants also argue that this
Court should abstain because these issues were then pending
before the Iowa Supreme Court and the District Court for Linn
County.  As noted above, the Iowa Courts have now ruled on Mr.
Taft's claims.  Accordingly, this Court declines to abstain
and will address the merits.

resulted in loss of good-time credits or in imposition of solitary confinement be afforded minimal due process protections, including an advance written notice of the claimed violation, written statement of fact findings as to the evidence relied upon and the reasons for the disciplinary action taken, right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals. Confrontation, cross-examination and counsel are not constitutionally required. <u>Wolff</u>, 418 U.S. at 562-568.

Clearly this case is not like <u>Wolff</u> in that Mr. Taft is a patient, not a prisoner. He does not receive good time credits or other, similar, prison style incentives that can affect a prisoner's release. Accordingly, Mr. Taft cannot claim the same liberty interest that was claimed in <u>Wolff</u>, regarding good-time credit. Instead, Mr. Taft argues he has a liberty interest in 'transitional release' under I.C.A. § 229(A).8A, cited above.

The Defendants respond by saying:

> [I.C.A. § 229(A).8A] is different from the Nebraska scheme at issue in <u>Wolff</u> because in <u>Wolff</u> Nebraska created a good-time credit system, and the only way goodtime

> credits could be revoked was if the
> offender was guilty of serious misconduct.
> <u>Wolff</u>, 418 U.S. at 558. Here, the behavior
> report is but one of several criteria,
> satisfaction of which qualifies one for
> eligibility for transitional release.
>
> Additionally, transitional release is not
> discharge, it is a different phase of
> treatment. Discharge implicates a liberty
> interest, like the absolute release at
> issue in <u>Wolff</u>. Transitional release is a
> step-down phase of treatment; the
> legislature has assigned to CCUSO the
> responsibility of establishing the
> boundaries of the transitional release
> program.

Docket No. 25, Att. 1, p. 5-6.

The Defendants are correct. The Supreme Court has limited the ruling in <u>Wolff</u> to situations where a punitive action causes an atypical, significant deprivation in which a State might conceivably have created a liberty interest. See <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995). In <u>Sandin</u>, the Supreme Court ruled on the due process claim of an inmate whose disciplinary write-up caused him to be segregated from the normal prison population. The Court stated:

> [d]iscipline by prison officials in
> response to a wide range of misconduct
> falls within the expected perimeters of the
> sentence imposed by a court of law. This
> case, though concededly punitive, does not
> present a dramatic departure from the basic

14

> conditions of Conner's indeterminate
> sentence.

*Sandin*, 515 U.S. at 485. The 8th Circuit has also endorsed this view. See <u>Orr v. Larkins</u>, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam), where the Court stated that to prevail on a due process claim, a plaintiff must first demonstrate the deprivation of life, liberty, or property; and an inmate was not deprived of liberty interest during 9 months in administrative segregation. The Defendants argue that because a behavior report is not the exclusive factor in deciding whether a patient is ready for transitional release, rather a behavior report is merely one factor counted by CCUSO in determining if a patient is ready for transitional release, this situation is covered by the <u>Sandin</u> precedent, not the <u>Wolff</u> precedent. This Court is persuaded the Defendants are correct.

It is clear from the record that avoiding behavior reports will not automatically entitle a patient to transitional release. Avoiding behavioral reports is simply one requirement, out of several, that a patient must complete before being eligible for transitional release. Behavior reports and many other things are considered by the CCUSO (or

15

the Iowa Court Judge) to determine if transitional release (or full discharge) is appropriate. Accordingly, the use of behavioral reports in considering whether a patient should progress through the treatment phases towards transitional release does not rise to the type of liberty interest protected by and requiring a <u>Wolff</u> style hearing.

This is especially true when you consider the practical implications of Mr. Taft's argument. If Mr. Taft is correct, and every factor considered by CCUSO when deciding to grant transitional release became a liberty interest protected by <u>Wolff</u> and its progeny, CCUSO would be crippled by an unending stream of constant hearings. For example, I.C.A. § 229A.8A states that one factor to be considered regarding transitional release is if the committed person has achieved and demonstrated significant insights into the person's sex offending cycle. Under Mr. Taft's theory, he would be entitled to an individualized hearing on that issue (and every other issue), if CCUSO determined he had not demonstrated significant insight into his sex offending cycle. That would be an unworkable standard and is not supported by the Plaintiff's due process claim.

Additionally, Mr. Taft is given the opportunity to challenge any behavior reports every year during the annual review. For the annual review, Mr. Taft is appointed counsel and is allowed to consult experts. If Mr. Taft feels a behavior report is not entitled to credit or should not be considered, he is well with in his rights to argue that it is wrong and he should be discharged by CCUSO. Mr. Taft takes advantage of this opportunity. See <u>Taft v. Iowa Dist. Court ex rel. Linn Cnty.</u>, 828 N.W.2d 309, 322 (Iowa 2013), where the Iowa Supreme Court stated, "[t]he district court concluded Taft was statutorily ineligible for transitional release based primarily upon his incurring six major disciplinary reports within the six-month review period. See <u>Id.</u> We agree with that conclusion." Mr. Taft was given the opportunity to challenge the behavior reports in a hearing before a judge. The fact that he lost does not mitigate the fact that he had the opportunity to raise a challenge. Moreover, having an annual review with appointed counsel actually exceeds the due process protection contemplated by <u>Wolff</u>. Accordingly, Mr. Taft has failed to articulate a valid liberty interest that he is being denied by CCUSO's behavior report system. Because

Mr. Taft has failed to articulate a valid constitutional claim, and there are no disputed factual issues, the Defendants are entitled to Judgment as a matter of law and their Motion for Summary Judgment must be granted.

**B. State Court Precedent**

This Court's conclusion is supported by the decisions of the Iowa Supreme Court. In <u>Swanson v. Civil Commitment Unit for Sex Offenders</u>, 737 N.W.2d 300, 308 (Iowa 2007), the Iowa Supreme Court considered whether behavioral reports at CCUSO affected a due process liberty interest. The Defendants argue:

> [i]n <u>Swanson v. Civil Commitment Unit for Sex Offenders</u>, 737 N.W.2d 300 (Iowa 2007), a committed patient argued that he was denied due process around nine behavioral reports. He argued that the receipt of these reports necessarily lengthened the duration of his confinement at CCUSO. <u>Swanson</u>, 737 N.W.2d at 307. The Iowa Supreme Court reviewed the due process challenge under the <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976), standard.

Docket No. 25, Att. 1, p. 8. The Swanson Court concluded:

> applying the <u>Mathews</u> factors we find no
> additional process is necessary to satisfy
> Swanson's procedural due process rights
> under the federal and state constitutions."
> <u>Id.</u> at 309-10. This matter has been raised
> and resolved by the Iowa Supreme Court,
> under both the State and federal
> constitution.

Docket No. 25, Att. 1, p. 9. Additionally, in a concurring opinion, Justice Appel considered Swanson's claim under the <u>Sandin</u> precedent discussed above and reached the same conclusion. He stated:

> [i]n light of the strong language of the
> majority opinion in <u>Sandin</u>, however, I
> conclude that if the matter were presented
> to the United States Supreme Court today,
> the court would hold that the mere stigma
> associated with disciplinary proceedings is
> insufficient to give rise to a liberty
> interest and therefore does not form the
> basis for a contested case proceeding.

<u>Swanson</u>, 737 N.W.2d at 311-12 (Iowa 2007) (Appel, J. concurring).

Additionally, as mentioned above, Mr. Taft can challenge the use of behavioral reports during his annual review. He has done so, and those arguments have been rejected. See Docket No. 36, Att. 1, p. 23-26. To grant Mr. Taft relief in this case, the Court would have to overrule and vacate the previous rulings of the Iowa Supreme Court. The Court is

persuaded that the Iowa Supreme Court is correct in their analysis and will let their precedent stand.

## C. Eligibility for Transitional Release

Next, the Defendants argue that even if this Court ordered CCUSO to hold a <u>Wolff</u> style hearing, and even if that hearing found that all of Mr. Taft's behavior reports were unfounded, Mr. Taft would still not be eligible for transitional release. The Defendants are correct. As discussed above, avoiding behavior reports is merely one factor that is considered when deciding whether a patient should advance to transitional release. Additionally, Mr. Taft is only in Phase 2. As stated in the Defendant's brief:

> [Mr. Taft] remains on Phase two of a five phase program. Phase one is orientation – patients move through that in a matter of months. Transitional release is phase five. Plaintiff has significant treatment work ahead of him before he becomes eligible for transitional release. Because receipt of a behavior report is but one of several factors, all of which must be satisfied before the patient is eligible for transitional release, there is no nexus to a liberty interest.

Docket No. 25, Att. 1, p. 9. The Defendants argue that Mr. Taft is not otherwise eligible for transitional release even if he has no behavior reports. There is no evidence in the record to rebut that argument. Accordingly, even if the Court found that the lack of a <u>Wolff</u> style hearing violated due process requirements, Mr. Taft still would not be eligible for transitional release.

### D. Personally Responsible

Next, the Defendants argue that they are not personally responsible. As stated in the Defendant's brief, a plaintiff may bring a § 1983 claim only against those individuals actually responsible for the constitutional deprivation. <u>Doyle v. Camelot Care Centers</u>, 305 F.3d 603, 605, 614-615 (7th Cir. 2002). The Defendants state that named Defendant, Dr. Ryan, retired last June after years of valued service to the program. He does not determine present policy and is in no position to determine policy in the future. Moreover, there is no indication that he is in control of the behavior report policy or could grant Mr. Taft a hearing before some type of judge or tribunal. Similarly, Mr. Whitehead and Mr. McQueen are Treatment Program Supervisors. They do not create the

policy concerning behavior reports.  Even if the Court were persuaded that <u>Wolff</u> style hearings where required, none of these Defendants could implement a new hearing system at CCUSO.  Accordingly, Mr. Taft's claim cannot succeed.

### E. Qualified Immunity

Defendants next argue that they are entitled to a defense of qualified immunity.  Because the Court is persuaded that Mr. Taft's Complaint must be dismissed on the merits, as discussed above, the Court need not reach this argument.

## VI. CONCLUSION

For the reason set out above, the Defendants' Motion for Summary Judgment (Docket No. 25) is **granted**, and the Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED** this 28th day of March, 2014.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa